UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PASCO CWHIP
PARTNERS, LLC, et al.,

      Plaintiffs,

v.                                    CASE NO.: 8:13-cv-2377-T-23EAJ

PASCO COUNTY,

      Defendant.

_____/

## ORDER

    Alleging a claim for breach of contract, two claims for promissory estoppel, and a claim under Section 1983, the plaintiffs sue (Doc. 19) Pasco County.  Pasco County moves (Doc. 20) to dismiss each claim.

## BACKGROUND

    Created and financed by the Florida legislature, the Florida Housing Finance Corporation established the 2007 Community Workforce Housing Innovation Pilot (CWHIP) to "provid[e] affordable housing projects to successful applicants" within Florida.  Under CWHIP, a local government joins with a business that builds affordable housing.  Through the partnership, the local government offers money or property to the business.  With a project proposal and with support from local

government, the business can submit to Housing Finance a CWHIP application for a grant.

General Home Development and others formed Pasco CWHIP Partners (the Partners) for the "express purpose of pursuing a CWHIP project." (Doc. 19 at 3)  On January 22, 2008, the Pasco County Board of County Commissioners voted – and thereby allegedly agreed – to award the Partners a $700,000 unconditional loan to apply for a CWHIP grant.  Also, the Pasco County School Board agreed to donate the "Marlowe School site" to the project.  Featuring the $700,000 loan and the Marlowe School site, the Partners applied for a CWHIP grant on January 29, 2008. While the Partners applied for the CWHIP grant, Pasco County withdrew the donation of the Marlowe School site.  (Doc. 19 at 9)  Accordingly, the Partners revised the CWHIP application, the revision of which increased the contribution that Housing Finance required from Pasco County.  Pasco County refused to grant the Partners the additional money, but Housing Finance "subsequently determined that the total match requirement now needed from . . . Pasco County[] was only $450,000.00[] and that the additional match previously requested . . . was unnecessary." (Doc. 19 at 10)

On July 20, 2012, Housing Finance "issued an Order requiring all conditions in regard to the public-private partnership, including underwriting, be completed and board approved by February 5, 2013." (Doc. 19 at 10)  On December 4, 2012, Pasco

County approved a $450,000 loan, but on December 18, 2012, Pasco County

retracted the approval.  Accordingly, Housing Finance terminated the Partners'

CWHIP application.

Alleging three state law claims and one federal claim, the plaintiffs sued

(Doc. 2) Pasco County in state court.  After invoking "federal question" jurisdiction,

Pasco County moves to dismiss.

## DISCUSSION

The complaint alleges only one federal claim, Count IV, which is "based upon

rights guaranteed by the Fifth and Fourteenth Amendments."  (Doc. 19 at 20)

Although vague, Count IV harbors one or more of the arguably alleged Section 1983

claims: that Pasco County violated the plaintiffs' substantive due process right, that

Pasco County violated the plaintiffs' procedural due process right, and that Pasco

County violated the plaintiffs' equal protection right.

*1. Substantive Due Process*

The plaintiffs argue that Pasco County infringed their substantive rights by

withdrawing money and property from the CWHIP project.  Citing *McKinney v. Pate*,

20 F.3d 1550, 1560 (11th Cir. 1994), Pasco County argues that the plaintiffs may not

allege a substantive due process claim for a violation of a contract right.  "In short,

areas in which substantive rights are created only by state law (as is the case with tort

law and employment law) are not subject to substantive due process protection . . . ."

- 3 -

*McKinney*, 20 F.3d at 1556.  The plaintiffs agree (through silence) that their alleged substantive rights are "created only by state law" but argue that *McKinney* is inapplicable because Pasco County effected the withdrawal of money and property from the Partners' CWHIP project by legislative, not executive, action.  Pasco County's motion assumes the withdrawal was an executive, not legislative, action.

"Where an individual's state-created rights are infringed by 'legislative act,' the substantive component of the Due Process Clause generally protects him from arbitrary and irrational action by the government."  *Lewis v. Brown*, 409 F.3d 1271, 1273 (11th Cir. 2005).  *McKinney*, 20 F.3d at 1557 n.9, explains the difference between an executive and a legislative action:

> Executive acts characteristically apply to a limited number of persons (and often to only one person); executive acts typically arise from the ministerial or administrative activities of members of the executive branch. The most common examples are employment terminations.
>
> Legislative acts, on the other hand, generally apply to a larger segment of – if not all of – society; laws and broad-ranging executive regulations are the most common examples.

(citation omitted).

Pasco County's decision to withdraw both the money and the Marlow School site from the Partners' CWHIP project is executive, not legislative.  The withdrawal applied to a limited number of persons – the Partners and the two corporations associated with the Partners.  Neither withdrawal affects "a larger segment of – if not

- 4 -

all of – society," and neither withdrawal is comparable to a law or a "broad-ranging executive action[]." *McKinney*, 20 F.3d at 1557 n.9; *see also Kentner v. City of Sanibel*, 750 F.3d 1274, 1280 (11th Cir. 2014) (characterizing as legislative an ordinance that applies to all property within a particular zone, "not just those [properties] owned by the plaintiffs"); *Lewis*, 409 F.3d 1271 (characterizing as executive a county zoning commissioner's decision that affects three land owners); *Flint Elec. Membership Corp. v. Whitworth*, 68 F.3d 1309, 1313 (11th Cir. 1995) (characterizing as executive the selection according to state procurement law of a bidder for a state contract). Accordingly, under *McKinney*, the plaintiffs fail to state a substantive due process claim.[*]

*2. Procedural Due Process*

The plaintiffs argue that Pasco County withdrew money for the Partners' CWHIP application without procedural due process. However, the plaintiffs may sue under Florida law (as they have) and present their arguments to a Florida state court. Accordingly, no procedural due process violation exists. *See Horton v. Bd. of Cnty. Comm'rs of Flagler Cnty.*, 202 F.3d 1297, 1300 (11th Cir. 2000) ("[T]he process a state provides is not only that employed by the board, agency, or other governmental entity whose action is in question, but also includes the remedial process state courts

---

[*]"An alternate substantive due process test finds a violation if the questioned governmental action 'shocks the conscience' of federal judges. [This] standard has no place in a civil case for money damages." *McKinney*, 20 F.3d at 1556 (citation omitted).

would provide if asked."); *Whitworth*, 68 F.3d at 1314 ("The [plaintiffs] could have filed actions in state court pursuant to [Georgia law] for the purpose of rescinding the contracts with [the defendant] and/or to recover their bid preparation costs.  [Thus] . . . , their § 1983 procedural due process claims are not actionable." (footnote and citations omitted)); *McKinney*, 20 F.3d at 1565 ("Since the Florida courts possess the power to remedy any deficiency in the process by which [the plaintiff] was terminated, [the plaintiff] can not claim that he was deprived of procedural due process.").

*3. Equal Protection*

The plaintiffs' equal protection claim alleges that, over twenty years, Pasco County has neither withdrawn money for a public-private project nor "taken land already committed to an already approved and funded viable public-private project." (Doc. 19 at 25)  However, "[b]are allegations that 'other' [persons], even 'all other' [persons], were treated differently do not state an equal protection claim; a complaint must attempt to show in some fashion that these 'other' [persons] were situated similarly to the plaintiff." *Apothecary Dev. Corp. v. City of Marco Island, Fla.*, 517 F. App'x 890, 892 (11th Cir. 2013).  By failing to identify even one similarly situated person, the plaintiffs fail to state a claim.

- 6 -

## CONCLUSION

The motion (Doc. 20) to dismiss is **GRANTED IN PART**.  Count IV is **DISMISSED**.  Under 28 U.S.C. 1367, supplemental jurisdiction is **DECLINED**. This action is **REMANDED**.  *See Horton v. Bd. of Cnty. Comm'rs of Flagler Cnty.*, 202 F.3d 1297, 1300 n.3 (11th Cir. 2000).  The clerk is directed (1) to mail, as required by 28 U.S.C. § 1447(c), a certified copy of this order to the clerk of the Circuit Court for Pasco County, (2) to terminate any pending motion, and (3) to close the case.

ORDERED in Tampa, Florida, on August 1, 2014.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE